UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                      **DECISION AND ORDER**
                                                           00-CR-199S-19

JULIO NUNEZ,

              Defendant.

        1.      Presently before this Court is Defendant Julio Nunez's Motion to Dismiss the Superseding Indictment, which includes his renewed argument that the charges are barred by the Double Jeopardy Clause and his repeated request for dismissal pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure. (Docket No. 792.) In the alternative, Nunez seeks a risk assessment. (Docket No. 802.) For the following reasons, Nunez's motion is denied.

        2.      On March 14, 2001, Nunez was charged, along with 18 co-defendants, with a broad range of narcotics offenses in a 46-count Superseding Indictment. Specifically, Count 1 charges Nunez with conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base; Counts 2 and 3 charge him with substantive possession with intent to distribute cocaine; and Counts 10, 13, 14, and 17 charge him with using a communication device to facilitate the drug trafficking charged in Counts 1, 2, and 3; all in violation of Title 21 United States Code Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 843(b), and 846 and Title 18 United States Code Section 2. (Docket No. 69.)

1

3.      On July 27, 2000, before the return of the Superseding Indictment (the "Western District Indictment"), Nunez was indicted in the Southern District of New York[1] and charged with various narcotics offenses (the "Southern District Indictment"). On January 23, 2003, Nunez appeared before the Honorable Richard Conway Casey, United States District Court Judge, and pleaded guilty to Count 1 of the Southern District Indictment, which charged Nunez in a narcotics conspiracy.

Thereafter, Judge Casey ordered that Nunez undergo a psychiatric evaluation pursuant to 18 U.S.C. § 4244, which reflected that Nunez exhibited "Major Depressive Disorder with psychotic features," a mental disease under the law. (Docket No 573.) Nunez was transferred to Butner Federal Medical Facility in North Carolina ("Butner"). (Id.)

On July 19, 2005, Judge Casey issued an order acknowledging the parties' agreement that Nunez was suffering from a mental disease or defect and, further, committing Nunez to the custody of the Attorney General pursuant to 18 U.S.C. § 4244[2] for a term of life—life being the maximum term authorized by law for the offense for which Nunez was found guilty, see 21 U.S.C. § 841(b)(1)—with this provisional sentence to be

---

[1] That case is docketed in the Southern District of New York as case number 00-CR-121(RCC).

[2] Title 18, United States Code, Section 4244 governs the hospitalization of a convicted person suffering from mental disease or defect, and provides:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for care or treatment in a suitable facility. Such a commitment constitutes a provisional sentence of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty.

18 U.S.C. § 4244(d).

lifted and a final sentence imposed if Nunez recovered from his mental disease. (Id.) Meanwhile, this Court adjourned trial on the Western District Indictment while awaiting any progress in Nunez's restoration to competency.

4. In light of the delay in bringing the instant case to trial, Nunez previously moved to dismiss the Western District Indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure. On July 17, 2006, this Court denied his motion, finding that the trial delay resulted from Nunez's prolonged mental incompetency and, further, that the delay did not violate Nunez's right to a speedy trial. (Docket No. 679.) At that time, however, this Court noted that, "the Government may reasonably conclude that dismissal of these charges may be warranted if it is confirmed that Mr. Nunez is unlikely to be restored to competency." (Id.)

On September 8, 2009, the Government acknowledged that Nunez's most recent evaluation at Butner reflected his continuing incompetence, but reaffirmed its objection to dismissal of the pending charges of the Western District Indictment. (Docket No. 781.) Because Nunez's Southern District counsel is "seeking to have the charges in the Southern District against [Nunez] dropped so that [Nunez] can be deported to the Dominican Republic," the Government advised that it "cannot rely on the continued viability of the Southern District [] prosecution to redress the defendant's criminal liability." (Id.)

5. In the instant motion, Nunez first moves to dismiss the Western District Indictment on double jeopardy grounds, arguing that this prosecution would impose

3

multiple punishments for the same offenses.³ (Docket No. 792, ¶ 5.) Nunez contends that the activities encompassed by his conviction on Count 1 of the Southern District Indictment "involve the same conduct, facts, and law alleged in the WDNY indictment." (Id. at ¶ 6.)

6. In its response, the Government argues that, here, the substantive offenses charged in the Western District Indictment are not subject to dismissal on double jeopardy grounds because Nunez has been convicted only of a conspiracy charge, and, further, that Nunez has failed to make the *prima facie* showing necessary to establish a non-frivolous double jeopardy claim for the successive conspiracy charge. (Docket Nos. 351, 797.) Moreover, on the merits, the Government contends that the Double Jeopardy Clause is not violated because the two conspiracy offenses are distinct. (Docket No. 351.)

7. Embodying protection against double jeopardy, the Fifth Amendment provides that never "shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." United States v. Estrada, 320 F.3d 173, 180 (2d Cir. 2003) (citation omitted). "A double jeopardy claim cannot succeed unless the charged offenses are the same in fact and in law." Id.

To determine whether two offenses are the same for double jeopardy purposes, courts ordinarily apply the "same elements" test described in Blockburger v. United States. 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The inquiry is "whether each offense

---

³ Nunez previously moved to dismiss on this basis (Docket No. 347, ¶ 6) and this Court deferred in ruling on the motion due to the then-pending results of Nunez's mental examination as well as his counsel's request (Minutes Entries, May 26, 2004, and June 29, 2004).

4

contains an element not contained in the other," United States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993); if so, the offenses are distinct and there is no double jeopardy bar.  Thus, the Supreme Court has noted that "a substantive crime and a conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes."  United States v. Felix, 503 U.S. 378, 389, 112 S. Ct. 1377, 1384, 118 L. Ed. 2d 25 (1992); United States v. Gambino, 968 F.2d 227, 231 (2d Cir. 1992).

Where a double jeopardy claim is based on successive conspiracy charges, however, courts in this Circuit follow the fact-intensive analysis articulated in United States v. Korfant.  771 F.2d 660, 662 (2d Cir. 1985).  In this burden-shifting analysis, a defendant bears the initial burden of making "a non-frivolous showing that the two indictments in fact charge only one conspiracy," whereupon the burden shifts to the prosecution to show, by a preponderance of the evidence, that the two conspiracies are distinct.  United States v. Lopez, 356 F.3d 463, 467 (2d Cir. 2004).  The Second Circuit has identified eight factors to be considered in determining whether there are two distinct conspiracies, including:

> (1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

Korfant, 771 F.2d at 662.  This analysis is to be conducted in light of the "totality of the circumstances" presented.  Id.

8. Here, the narcotics conspiracy charge to which Nunez pleaded guilty in the Southern District Indictment and the substantive possession with intent to distribute offenses and telephone counts charged in the Western District Indictment each contain "an element not contained in the other."  Dixon, 509 U.S. at 696.  Further, it is well settled that

5

substantive drug offenses and a conspiracy to commit those offenses are distinct offenses for double jeopardy purposes. See Felix, 503 U.S. at 389. Because these Western District charges are not the same in law as the Southern District charge, Estrada, 320 F.3d at 180, the Double Jeopardy Clause does not bar Nunez's prosecution on the substantive drug and telephone offenses contained in Counts 2, 3, 10, 13, 14, and 17 of the Western District Indictment and his motion to dismiss these counts is therefore denied.

9. Both Count 1 of the Western District Indictment and the count to which Nunez pleaded guilty in the Southern District Indictment charge narcotics conspiracy offenses.

Count 1 of the Southern District Indictment charges that from at least July 1999 through February 2, 2000, in the Southern District of New York and elsewhere, 19 defendants, including Nunez, participated in a conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Nunez is named in 13 overt acts listed in Count 1, which refer to specific narcotics transactions, conversations, and meetings between Nunez and other co-conspirators.

Count 1 of the Western District Indictment charges that between about January 1, 1994, and January 3, 2000, in the Western District of New York and elsewhere, 19 defendants, including Nunez, participated in a conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846.

Although the two indictments comprise the only support offered for Nunez's double jeopardy claim, (Docket No. 347, ¶ 6), similarities between the two conspiracy counts exist on the face of the indictments: both involve violations of 21 U.S.C. § 846; the time frame

6

of the Southern District Indictment is almost entirely contained within the time frame of the Western District Indictment; and both involve the same types of narcotics in similar quantities. Accordingly, this Court finds that Nunez has made a sufficient showing of similarities between the two charges to establish a *prima facie*, non-frivolous double jeopardy claim, thereby shifting the burden to the Government to show that these are distinct conspiracies. See Lopez, 356 F.3d at 467.

Evaluation of successive conspiracy charges in the indictments requires consideration of the Korfant factors. 771 F.2d at 662. Here, while both conspiracy charges involve the same statutory offense and some overlap of time and general objectives, these similarities are outweighed by several critical distinctions between the charges. Estrada, 320 F.3d at 182 ("such overlapping by no means negates the substantial dissimilarities that render the two offenses distinct").

To begin, that Nunez is charged in both indictments with violating 21 U.S.C. § 846 is a similarity at such a "general level [that it is] of limited import" in determining whether only one conspiracy is charged. Macchia, 35 F.3d 662, 669 (2d Cir. 1994); see also United States v. Basciano, 599 F.3d 184, 198 n.11 (2d Cir. 2010) (explaining that the very purpose of the Korfant analysis is to determine "whether successive conspiracy charges brought *under the same statute* were the same for double jeopardy purposes").

Next, of the 19 co-defendants charged in each of the two indictments, Nunez is the sole overlapping participant named in both conspiracies. Nunez played a different role in each alleged conspiracy: although he held a leadership position in the acquisition and distribution of cocaine in the Southern District conspiracy, he allegedly served only as a source of narcotics for other distributors in the Western District conspiracy. Moreover, it

7

appears that those associated with Nunez in the narcotics distribution conspiracy of the Southern District were "entirely distinct" from those associated with Nunez in the broad range of operations charged in the Western District conspiracy. Estrada, 320 F.3d at 182.

The overlap in time between the two conspiracy charges also provides little support for Nunez's claim. The Southern District Indictment charged a seven-month conspiracy, while the Western District Indictment charges a six-year conspiracy, and the shorter conspiracy is almost entirely contained within the time frame of the longer conspiracy. Here, however, Nunez's successive charges do not "implicat[e] the disapproved process whereby the Government charges smaller and smaller conspiracies . . . until it finds one small enough to be proved to the satisfaction of a jury." Estrada, 320 F.3d at 182–83 (internal quotations omitted). Rather, Nunez was charged first with the shorter conspiracy of the Southern District Indictment. When this occurs, "there is not the same opportunity for prosecutorial abuse, and the overlap of time is therefore a less important consideration." Macchia, 35 F. 3d at 669.

Likewise, although the quantity and type of narcotics involved in both conspiracy charges are nearly identical, review of the indictments and pretrial filings reveals that the similarities between the modes of operation in the two conspiracies amount to little more than the general assessment that, in each, individuals obtained cocaine in exchange for money and then distributed the drugs to others. In the Southern District conspiracy, Nunez maintained a stash house in the Bronx to manufacture and distribute narcotics while directing distribution of the drugs between the Bronx and Manhattan. In contrast, Nunez is named as a supplier of cocaine in the Western District conspiracy, in a scheme that involved drugs obtained in New York City and Rochester for distribution in Buffalo and

8

Niagara Falls. Although Nunez argues that both charges encompass the same conduct, significant differences exist between the nature of the conspiracies and the individuals involved in each enterprise, indicating that the conspiracies are separate.

It appears that no common overt acts are shared by the two conspiracies. The 13 overt acts in which Nunez is named in the Southern District Indictment charge Nunez's drug distribution in New York City and his narcotics- and firearms-related telephone communications in the Bronx. No overlapping conduct is evident in the substantive counts that form part of the proof for the conspiracy in the Western District Indictment.

Little geographic overlap exists between the two narcotics conspiracies; as noted, the Southern District charge involved drug distribution in New York City with overt acts occurring in the Bronx and Manhattan, while the Western District charge involves distribution in Buffalo and Niagara Falls of drugs obtained from suppliers in New York City and Rochester. Although both indictments include New York City within the geographic scope of the alleged conspiracies, the respective underlying criminal objectives of the conduct that took place in that locale are distinct.

It is not instructive that both conspiracies share the general objective of distributing narcotics for profit, otherwise "every conspiracy to distribute heroin (or cocaine, or anything else) would share a common objective for double jeopardy purposes." Macchia, 35 F.3d at 671. Rather, the specific objective of the Western District conspiracy was to engage in a broad range of drug distribution activity in the Niagara Falls area, while the Southern District conspiracy centered on specific activity in New York City. There is no evidence that the 18 other co-conspirators in the Southern District charge were aware of Nunez's transactions to supply narcotics for distribution in Niagara Falls, nor that Nunez's 18 distinct

9

co-conspirators in the Western District charge shared his goal in the Southern District conspiracy of distributing narcotics in the Bronx. Thus, it appears that the agreements of these two groups of co-conspirators differed, and "multiple agreements to commit separate crimes constitute multiple conspiracies." Estrada, 320 F.3d at 184 (citation omitted).

Finally, there existed no interdependence between the two conspiracies, as the success or failure of one conspiracy had no effect on the other. See Macchia, 35 F.3d at 671. The Government points to a specific instance of disconnect between the two conspiracies, noting that although the conspiracy charged in the Western District Indictment suffered a seizure of 1.5 kilograms of cocaine in July 1999—which fell within the six-month overlap of time between the two conspiracies—this setback had no effect on the cocaine conspiracy of the Southern District Indictment. Indeed, the agreement among Nunez and his Southern District co-conspirators was "complete in and of itself" and independent of the Western District conspiracy that "existed long before" the conspiracy in the Southern District. Estrada, 320 F.3d at 184. Nor was Nunez's participation in one conspiracy dependent on his participation in the other. See id. Nunez could certainly hold a leadership role in the drug distribution activity of the Southern District conspiracy with or without participating in a distinct conspiracy in which he served, from New York City, as a source of cocaine supply for distribution in Niagara Falls.

Upon evaluating the totality of the facts presented "with the lively awareness that no dominant factor or single touchstone" controls the analysis, this Court finds that the Government has shown, by a preponderance of the evidence, that the successive conspiracies charged in the Southern and Western District Indictments are distinct. Macchia, 35 F.3d at 668. Accordingly, the Double Jeopardy Clause does not bar Nunez's

prosecution on the conspiracy offense contained in Count 1 of the Western District Indictment and his motion to dismiss this count is denied.

10. Nunez next seeks dismissal of the Western District Indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure. (Docket No. 792, ¶ 9.) This Court already denied dismissal on this basis on July 17, 2006. (Docket No. 679.) At that time, this Court found (1) that the trial delay in this case resulted from Nunez's psychiatric examination and prolonged mental incompetency; (2) that such incompetency is an automatic exclusion of time under the Speedy Trial Act; (3) that, despite its length, the delay caused no substantial prejudice to Nunez, given that he had been provisionally sentenced on the Southern District Indictment to a term of life; and (4) that the trial delay did not violate Nunez's right to a speedy trial. (Id.) Because no new developments have occurred to change this Court's findings, Nunez's motion for dismissal under Rule 48(b) is denied.

11. As an alternative to dismissal of the Western District Indictment on this basis, Nunez requests a risk assessment. (Docket No. 802, ¶ 9.) This request is misplaced. As this Court has previously noted, after Nunez pleaded guilty to Count 1 of the Southern District Indictment, Judge Casey "assumed responsibility for making determinations with respect to [Nunez's] competency and his continued detention under 18 U.S.C. § 4244." (Docket No. 679, ¶ 10.) Nunez now seeks an order directing Butner mental health professionals to evaluate him and file a risk assessment report for a court's use in determining whether he may be conditionally released from detention. With continued deference to Judge Casey's judgment on these matters, it is not appropriate for this Court to entertain issues regarding Nunez's competency evaluations and conditions of release

from his sentence on the Southern District Indictment. Accordingly, Nunez's request for a risk assessment will be denied without prejudice to application being made in the Southern District of New York.[4]

12. In light of the foregoing, this Court finds that dismissal of the Western District Indictment is not warranted pursuant to the Double Jeopardy Clause or Rule 48(b) of the Federal Rules of Criminal Procedure. Accordingly, Nunez's Motion to Dismiss is denied.

IT IS HEREBY ORDERED, that Defendant Julio Nunez's Motion to Dismiss the Superseding Indictment (Docket No. 792) is DENIED.

SO ORDERED.

Dated: January 13, 2011
      Buffalo, NY

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                      Chief Judge
                                        United States District Court

---

[4] Nunez's claim that he remains "detained on his indictment in the Western District of New York and confined at Butner" is incorrect. (Docket No. 802, ¶ 4.) Nunez's continued detention at Butner is due to his provisional sentence on the Southern District Indictment. (Docket No. 573.) Judge Casey's July 19, 2005 order committing Nunez to the Attorney General for a term of life pursuant to 18 U.S.C. § 4244 included the directive that, "if the director of the facility in which Defendant is committed determines that Defendant has recovered from his mental disease, he or she shall so certify to the Court [of the Southern District of New York] pursuant to § 4244(e) and a final sentence will be imposed." (Docket No. 573.) In fact, Dr. Robert G. Lucking, Staff Psychiatrist at Butner, opined in his May 30, 2009 report that Nunez "cannot be restored to competency with further treatment." (Docket No. 781.) Nunez thus remains detained at Butner pursuant to Judge Casey's order, not the indictment in this case.